382 P.2d 686

**Theodore PRESTON, Appellant,**

v.

**Frank DENKINS, Edward A. Smith, and William G. Hall, as Administrator with the Will Annexed of the Estate of Ronaldo F. Denkins, Deceased, Appellees.**

No. 6826.

Supreme Court of Arizona.

En Banc.

May 29, 1963.
Rehearing Denied Sept. 17, 1963.

Fickett & Dunipace, Stauffer & Stauffer, Tucson, for appellant.

Hall, Catlin & Jones, Tucson, for appellees.

LOCKWOOD, Justice.

In 1926 Edward Robinson died leaving certain real property in Pima County, Arizona. His six children, Mabel Preston, William Robinson, John E. Robinson, Cora E. Johnson, Lillie B. Stevens and Pearl Denkins as his heirs became tenants in common of this property.

During the period of 1926 to 1947 the major portion of the taxes on the property were paid by Mabel Preston. Taxes for 1947 were not paid and became delinquent. Theodore Preston, appellant herein, is the son of Mabel Preston. On October 23, 1948, he purchased the land at a tax sale for the amount of $27.53 and received a treasurer's certificate of sale. On April 9, 1952, he instituted legal proceedings to foreclose redemption rights and to quiet title in himself. Named as defendants were William M. Robinson; Edwin Smith, son of Cora E. Johnson, deceased; Ronaldo Denkins, Frank Denkins, Ione Denkins, Katherine Denkins and Abner Denkins, all children of Pearl I. Denkins, deceased; the unknown heirs of John E. Robinson, deceased; and the unknown heirs of all of these defendants. He did not join his mother, Mabel Preston, nor Lillie B. Stevens or her heirs. Service on the defendants was by publication, appellant filing an affidavit that the residences of the known defendants and the known heirs were unknown to him and that he believed none of the defendants were residents of Arizona.

He also filed an affidavit that he was unable to determine whether any of the defendants were in military service and an attorney to represent the interest of any defendants who might be in military service was appointed by the court. Default judgment was entered on August 28, 1952, foreclosing the redemption rights of the defendants and quieting title in the appellant. An additional defendant, the Pima County Treasurer, was personally served and filed an answer disclaiming any interest in the property. A treasurer's deed was issued to the appellant under date of September 9, 1952, and thereafter recorded in the office of the Pima County Recorder.

On November 23, 1955, appellee Frank Denkins, representing the interest of himself and the heirs of William Robinson, Cora E. Johnson and Ronaldo Denkins, all deceased, filed a motion to vacate the judgment and for leave to file answer. The motion was supported by affidavit of Frank Denkins that the appellant had falsely stated in his affidavit for publication of service that he did not know the residences and whereabouts of the defendants, when their whereabouts actually were well known to him; and that defendants had no notice or knowledge of the action until long after judgment had been taken against them. Thereafter appellee William G. Hall, as administrator with will annexed of the estate of Ronaldo F. Denkins, deceased, filed a motion to vacate the default judgment and adopted the pleadings of Frank Denkins in support thereof.

The record is a vertiginous maze of technical motions, counter-motions, affidavits and objections, enumeration of which would serve no purpose. Following a hearing on the motion to vacate the default judgment, at which evidence was taken, the trial court held the judgment void for lack of jurisdiction over the named defendants and set it aside.

Theodore Preston has appealed, making twenty-two assignments of error. These will be discussed as related to the legal questions raised.

Appellant states as a proposition of law that the litigants are entitled to a jury trial as to the contested issues of fact on a motion to set aside a judgment, relying on Arizona Constitution, Art. 2, § 23, A.R.S. However, he has failed to support this proposition by argument or further authority. Nor do appellees throw much light on this proposition in the way of analysis or decisive authority. In determining this question we must first resolve the nature of the application of defendants to vacate the judgment and its timeliness.

Appellant contends that the motions to vacate were not timely filed under Rule 60(c), Rules of Civil Procedure, 16 A.R.S.[1]

1. "60(c) Mistakes; inadvertence; surprise; excusable neglect. On motion and upon such terms as are just, the court may relieve a party or his legal repre-

since more than one year had elapsed since entry of judgment.

■ In jurisdictions in which there are terms of court, the accepted principle is the court has the inherent power to vacate, or modify its judgment within its discretion so long as the term of the court at which the judgment was rendered has not expired. In Arizona where there is no set term of court, the inherent power of the court to vacate or modify its judgment does not extend beyond the point at which the judgment becomes final, except as authorized by law. When a judgment becomes final, the power of the court to open it is governed by the Rules of Civil Procedure adopted by this court.[2] State v. McCarrell, 80 Ariz. 240, 295 P.2d 1086; Dockery v. Central Ariz. Light & Power Co., 45 Ariz. 434, 45 P.2d 656.

■ This limitation does not, however, apply to the right to challenge a judgment on the ground that it is void for lack of jurisdiction of the parties. The right of the court to hear such a challenge does not depend upon rules of the court or statute.

Vazquez v. Dreyfus, 34 Ariz. 184, 269 P. 80; Rico Consol. Min. Co. v. Rico Exploration Co., 23 Ariz. 389, 204 P. 138; 49 C.J.S. Judgments § 288, p. 523.

■ Statutes of limitations have no application to void judgments. Brandt v. Brandt, 76 Ariz. 154, 261 P.2d 978, and therefore the one year limit imposed by Rule 60(c) does not bar appellees' motion to vacate. Nor does Rule 60(c) control the nature of the proceedings. It is well established that a motion to vacate a default judgment for mistake, inadvertence, surprise or excusable neglect under Rule 60(c) of the Rules of Civil Procedure is addressed to the sound discretion of the trial court. Postal Benefit Insurance Co. v. Johnson, 64 Ariz. 25, 165 P.2d 173. However, in such a case the *validity* of the judgment is not an issue but rather whether the court will permit the movant relief from a valid judgment. Bray v. Germain Investment Co., 105 Colo. 403, 98 P.2d 993. If the judgment is void for lack of jurisdiction the court has no such discretion but must vacate the judgment. Gordon v. Gordon, 35 Ariz. 357, 278 P. 375:

sentative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain

an action to relieve a party from a judgment, order, or proceeding, or to set aside within one year a judgment obtained against a defendant not actually personally notified."

2. The Rules of Civil Procedure adopted by this court, have the force and effect of statute so far as applicable to any case. DeCamp v. Central Ariz. Light & Power Co., 47 Ariz. 517, 57 P.2d 311.

"But when, as here, the right to serve the summons constructively is based upon the affidavit of the plaintiff that the residence of the defendant was unknown to her, when this statement was knowingly untrue and made for the specific purpose of preventing the defendant from appearing and making a defense, there was in fact no service at all and the court should so treat it. It would seem to be plain that the service of process by publication based upon such an affidavit could be of no more effect, for instance, than service by an officer who makes return that he has personally served a defendant when he has not in fact done so. In neither instance would there be any actual service. That the statute relating to service by publication has been complied with would avail nothing, in view of the fact that the condition giving a plaintiff the right to invoke it did not exist.

\*    \*    \*    \*    \*    \*

"The only effect such service can have is to confer a jurisdiction that is merely apparent or colorable, not actual or real. That this is true is clear because the court is necessarily without knowledge of a defect in service that is regular on its face and can take cognizance of it only after it is disclosed by proof of extrinsic facts dehors the record. But when proof of this kind is made, and the defect is shown to be one invalidating the service, every act theretofore or thereafter performed based upon it is void and without effect and should be set aside at the request of the party affected by it."

Thus the decision is founded on the facts showing no jurisdiction and not the discretion of the court. Appellant contends that he is entitled to a jury's decision on these facts.

The early Arizona practice was that, after the term of court expired, proceedings extrinsic to the action in which the judgment was rendered were required in those cases where it was necessary to show matters dehors the record to establish lack of jurisdiction. National Metal Co. v. Greene Etc. Co., 9 Ariz. 192, 80 P. 397. The reason as stated in the Greene case is that when a party is required to produce evidence dehors the record to show a judgment is void, he should be permitted to do so only where the facts on which he relied may be examined under the forms and sanction of a regular trial, and not upon a *motion* to vacate.

However, in the 1934 case of Bell v. Bell, 44 Ariz. 520, 39 P.2d 629, the court indicated that a motion to vacate a judgment based on lack of jurisdiction was a proper method of procedure, regardless of the time limitation for such a motion based

on other grounds. In 1936, in the case of American Surety Co. v. Mosher, 48 Ariz. 552, 64 P.2d 1025, this court approved the practice of obtaining relief from a void judgment either by motion to vacate the judgment or by an independent suit to have it set aside.[3]

■ The nature of the issues determines the right to a jury. Baumgartner v. Schey, 143 Colo. 373, 353 P.2d 375; 31 Am.Jur. Jury, § 25. In a suit in equity to receive the relief sought by a motion to vacate either party would have a right to demand a jury. Rules 39(a) and 39(*l*) Rules of Civil Procedure.

■ The court therefore was in error in its denial of a jury trial on appellant's timely request. However, the right to trial by jury only arises where there are disputed facts or where different inferences may be drawn from the undisputed facts. Rundle v. Winters, 38 Ariz. 239, 298 P. 929; Cf. Stephens v. White, 46 Ariz. 426, 51 P.2d 921. If, however, there is no conflict in the evidence and the court would be compelled to withdraw the case from a jury's consideration then no prejudice can result from the failure to call a jury, and the error is harmless.

Appellant contends that because he did not know the exact street number where defendant resided his affidavit that "the residences of the known defendants are to your affiant unknown" is true and therefore complies with the statute and the service by publication is effective. He cites Rule 4(e)(1), Rules of Civil Procedure,[4] and

3. Cf. Shay v. Agricultural Stabilization & Conservation State Committee for Ariz., (9th Cir.) 299 F.2d 516, and Jackson v. Heiser, (9th Cir.) 111 F.2d 310, wherein it was held that a direct attack on a void judgment under Rule 60(c) was in effect an independent action, governed by the same legal principles applicable to an independent suit.

4. "Summons; service by publication. *When a party to the action, at the time of commencing the action or at any time during its progress,* files an affidavit in the action that the defendant is a nonresident of the state, or that he is absent from the state, or that he is a transient person, *or that his residence is unknown to the party,* or that the defendant is a corporation incorporated under the laws of any other state or foreign country and is doing business in this state, or has property herein, but has no legally appointed and constituted agent in this state, or that the defendant is concealing himself to avoid service of summons, *a summons shall be issued as in other cases, and service shall be made by publication thereof in a newspaper published in the county where* the action is pending, and if no newspaper is published in such county, then in a newspaper published in an adjoining county, at least once a week for four successive weeks, and the service shall be complete thirty days after the first publication. When the residence of the defendant is known to the party it shall be stated in the affidavit, and the party shall forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the defendant at his place of residence, and the affidavit of the person mailing the copies shall be prima facie evidence of the mailing. *If the residence is unknown it shall be so stated.*" (Emphasis supplied.)

claims the word "residence" means mailing address of the defendant. He claims that there is no duty upon the affiant to make an investigation to discover the mailing address.

It is not the *allegation* that the residence is unknown which confers jurisdiction upon service by publication but the *existence of the jurisdictional fact* that the residence is unknown. Lown v. Miranda, 34 Ariz. 32, 267 P. 418:

> "The general statute providing for service of summons by publication requires an affidavit, of the party seeking to obtain such service, to the effect that defendant is a nonresident of, or absent from, the state, or that he is a transient person, or that his residence is unknown to affiant, or that he conceals himself. Paragraph 447, Civil Code. Precedent to the right to have constructive service under this statute, the existence of certain facts must be shown, and 'hence the *fact* and mode of establishing it is jurisdictional.'"

Regardless of whether the affidavit must recite a showing of due diligence, such diligence as a fact is prerequisite to the jurisdiction of the court.

In the Miranda case the affiant did make inquiry and investigation into the address and whereabouts of defendant. However, he failed to ask defendant's tenants who then were living on the property which was the subject of the action. The court held this constituted lack of diligence for "[t]hat source of information certainly would have been sounded if the defendant sincerely wanted to find the plaintiff."

In the instant case lack of diligence is conclusively shown by appellant's own testimony summarized in the opening brief as follows:

> "Appellant * * * testified in substance as follows: he knew Edward A. Smith and that he was a descendent of Cora Johnson * * *; Smith might have visited Tucson in 1949 or 1950 * * *; he did not know Smith's address in Los Angeles and he never wrote any letters to Smith, but in 1951 his wife sent a box of peaches to Smith in Los Angeles by American Express * * *; Ronaldo and Pearl Denkins were in Tucson in 1943 * * *; he knew where Ronaldo lived in Los Angeles, but did not know his address, and did not correspond with him, except on one occasion in February 1954 * *; he stayed at Frank Denkins' home in Los Angeles in 1945, when he went to attend a funeral, and met William Robinson, Sr., there for the first time * * *; he did not find out where he lived in Houston * * *; in 1945 he saw Ronaldo, Frank and Ione Denkins; in 1951 he saw Frank in Los Angeles and went by his house, although he had difficulty in finding it * * *;

Ronaldo was in Tucson in 1949 and he saw him, but he did not discuss with him THE LAND [sic] or the taxes thereon * * *; that Ione Denkins came to Tucson in June or July 1952 and stayed with Mabel Preston, about a block away from his home, and she stayed about a week and he saw her during that time * * *; that he saw Ronaldo, Frank and Edward Smith in Los Angeles in 1951 * * *; that Ronaldo's son-in-law Williams came to Tucson with Ronaldo in 1954, but he had not seen him before then; and that he saw Pearl Williams, Ronaldo's daughter, in Los Angeles in 1951, and may have seen two other daughters at the same time * * *; that the affidavit for publication was true * *; that in December 1953 his wife sent a Christmas card to Frank Denkins and that during each time he visited Frank in Los Angeles, Frank lived in the same house * * *; *he did not inquire of his wife or mother as to* the addresses of the defendants * * *; he was familiar with the postal regulations * * *; that unless a piece of mail was correctly addressed it would be returned." (Emphasis supplied.)

The undisputed evidence shows that the defendants in the action were appellant's cousins; he knew them personally and had visited some of them in their homes and they had visited him or his mother in Tucson. The means of learning their street addresses was readily available not only by inquiry of appellant's mother and wife but by personal inquiry of the defendants themselves. Appellant saw and visited Frank Denkins, Ronaldo Denkins and Edward Smith after he bought the property and before the commencement of the foreclosure action. He testified he never discussed the property or the fact he had bought it at a tax sale for delinquent taxes with any of these people.

This is not a case, as appellant's brief intimates, of requiring extensive detective work into the whereabouts of strangers. It was his duty to make use of the obvious and simple means of learning the facts which his own testimony shows existed. Upon these facts the court could only find that the affidavit of appellant was not sufficient to maintain service.

The order appealed from set aside the entire judgment as void. Appellant assigns this as error claiming that some of the named defendants were not properly before the court on the motion to vacate. As to these it is claimed that the judgment is still valid. This contention is not sound. The jurisdiction of the court to enter any judgment must rest on the affidavit in support of service by publication. Since this affidavit is ineffective to secure jurisdiction by publication the court necessarily had no power to render judgment

against anyone in reliance thereon. The court not only had the power but the duty to expunge from the record the judgment which clearly is void. Gordon v. Gordon, supra.

Appellant contends that appellees are precluded from bringing the motion to vacate on the ground of laches. The general rule is that mere lapse of time is no bar to an attack on a void default judgment. Mutzig v. Hope, 176 Or. 368, 158 P.2d 110. There was uncontradicted evidence that appellees first learned of the judgment of foreclosure in May of 1954 by means of a title search by Arizona Land Title Company upon the request of Ronaldo Denkins. Appellant testified that Ronaldo and Frank Denkins came to Tucson in July of 1954 and spoke to him about the judgment. Ronaldo was killed in an automobile accident on the return trip to California. Frank Denkins and Ronaldo's children secured counsel and the attorneys of all parties engaged in negotiations during the interim period to the time the motion to vacate was filed in November of 1955. We find appellant makes no showing of any acts of appellees which would prevent them from obtaining relief against this judgment under the doctrine of laches.

Appellant urges that the appellees had constructive notice of the tax judgment by reason of its recording in September of 1952 and time therefore should be computed from that date. The recording statutes are designed to give constructive notice only to those persons who are under a duty to search the record. Mountain States Tel. & Tel. Co. v. Kelton, 79 Ariz. 126, 285 P.2d 168. These are creditors and subsequent purchasers. A.R.S. §§ 33–411, 33–412.

Mabel Preston was called to testify as a witness by appellees. Appellant objected to questions put to this witness on direct examination on the ground that they were leading in character. His proposition is that a party may not cross examine or ask leading questions of his own witness where there is no showing the witness is adverse or hostile. The general rule is that one may not lead his own witness with suggestive questions. J. & B. Motors, Inc. v. Margolis, 75 Ariz. 392, 257 P.2d 588, 38 A.L.R.2d 946. Such questions may be permitted, however, within the discretion of the trial judge. Talley v. State, 18 Ariz. 309, 159 P. 59. Appellant has failed to point out any particular question claimed to be leading and prejudicial. A review of the transcript reveals that the witness was seventy-eight years of age, in poor health, and that it appeared to the court she had difficulty in independently recalling events. It is proper for the court to permit leading questions under such circumstances. Stewart v. Marvin, 139 Cal.App.2d 769, 294 P.2d 114.

A number of other evidentiary questions are presented. However, rejection of the evidence cited by appellant could in no way affect the essential finding of lack of diligence and therefore the court's admission of this evidence need not be considered.

The only remaining question for consideration is appellant's proposition that appellees are barred from attacking the judgment under the equity doctrine of clean hands. The reason stated is that there are discrepancies between the statements in the affidavit filed by Frank Denkins with the motion to vacate and his testimony at the trial. The maxim that one who comes into equity must do so with clean hands can be invoked only when the act claimed to be unconscionable relates to the very activity which is the subject of the claim. Smith v. Neely, No. 6975, Ariz., March 27, 1963, 380 P.2d 148; Barr v. Petzold, 77 Ariz. 399, 273 P.2d 161. There is no showing that any of the defendants contributed at all to the circumstances under which appellant executed the affidavit for service by publication. Further the material facts stated in Denkins' affidavit are well supported by the evidence and record, regardless of whether they were within his personal knowledge.

Order vacating judgment is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.